## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ROCKIES REGION 2006 LIMITED | § | |
| PARTNERSHIP and ROCKIES REGION | § | Case No. 18-33513-sgj-11 |
| 2007 LIMITED PARTNERSHIP, | § | |
| | § | |
| Debtors. | § | Jointly Administered |

## <u>DEBTORS' AMENDED JOINT CHAPTER 11 PLAN</u>

Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED & MCGRAW LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

**COUNSEL TO THE DEBTORS**

Dated: July 24, 2019

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND INTERPRETATION ................................................... 1

    1.1    Definitions. ................................................................................................ 1

    1.2    Rules of Interpretation and Construction. ................................................ 7

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ......................................... 7

    2.1    Administrative Expense Claims. ............................................................. 7

    2.2    Fee Claims. ............................................................................................. 8

    2.3    Priority Tax Claims. ............................................................................... 8

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............. 9

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS ................... 10

    4.1    Classes 1A and 1B – Priority Non-Tax Claims. ................................... 10

    4.2    Classes 2A and 2B – Secured Claims .................................................. 10

    4.3    Classes 3A and 3B – General Unsecured Claims. ................................ 10

    4.4    Classes 4A and 4B – Equity Interests .................................................. 10

ARTICLE V IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE CLASSES ......................................... 11

    5.1    Classes Entitled to Vote........................................................................ 11

    5.2    Class Acceptance Requirement. ............................................................ 11

    5.3    Cramdown. ............................................................................................ 11

ARTICLE VI MEANS OF IMPLEMENTATION ...................................................... 11

    6.1    General. ................................................................................................. 11

    6.2    PDC Settlement. ................................................................................... 11

    6.3    Release of Liens. .................................................................................. 14

    6.4    Cancellation of Limited Partnership Agreements and Equity Interests. ... 15

    6.5    Partnership Actions. ............................................................................. 15

ARTICLE VII DISTRIBUTIONS ............................................................................... 15

    7.1    Date of Distributions. ........................................................................... 15

    7.2    Sources of Cash for Plan Distributions. ............................................... 16

    7.3    Disbursing Agent. ................................................................................. 16

    7.4    Rights and Powers of Disbursing Agent. ............................................. 16

    7.5    Record Date for Distributions. .............................................................. 16

    7.6    Recipients of Distributions. .................................................................. 16

7.7      Delivery of Distributions. ............................................................................17

7.8      Means of Payment. ......................................................................................17

7.9      Setoffs and Recoupment. ............................................................................17

7.11    Distributions After Effective Date..............................................................17

7.12    Withholding and Reporting Requirements. .................................................17

7.13    No Postpetition Interest. .............................................................................18

7.14    Time Bar to Payments. ...............................................................................18

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS ..............................................................................................................................18

8.1      Objections to Claims. .................................................................................18

8.2      No Distributions Pending Allowance. ........................................................18

8.3      Distributions After Allowance. ..................................................................18

8.4      Disallowance of Late Filed Claims; Proof of Equity Interest. ..................19

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..............................................................................................................................19

9.1      Rejection of Contracts and Leases. ............................................................19

9.2      Inclusiveness...............................................................................................19

9.3      Claims Based on Rejection of Executory Contracts or Unexpired Leases.19

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN ....................................................................................20

10.1    Conditions to Confirmation of Plan. ..........................................................20

10.2    Conditions to Effective Date of Plan..........................................................20

10.3    Waiver of Conditions Precedent.................................................................21

10.4    Effect of Failure of Conditions...................................................................21

10.5    Reservation of Rights. ................................................................................21

ARTICLE XI EFFECTS OF CONSUMMATION .............................................................21

11.1    Revesting of Assets. ...................................................................................21

11.2    Exculpation.................................................................................................22

11.3    Releases by the Debtors and PDC. .............................................................22

11.4    Third Party Release. ...................................................................................23

11.5    Injunction and Stay.....................................................................................24

11.6    Preservation of Claims. ..............................................................................24

11.7    Compromise of Controversies.....................................................................24

ARTICLE XII RETENTION OF JURISDICTION ........................................................... 25

ARTICLE XIII MISCELLANEOUS ............................................................................... 26

    13.1    Payment of Statutory Fees. ........................................................ 26

    13.2    Filing of Additional Documents. ............................................... 26

    13.3    Schedules, Exhibits and Plan Supplement Incorporated. .......... 26

    13.4    Amendment or Modification of the Plan. .................................. 26

    13.5    Inconsistency. ........................................................................... 27

    13.6    Exemption from Certain Transfer Taxes. ................................... 27

    13.7    Expedited Tax Determination. ................................................... 27

    13.8    Ordinary Course. ...................................................................... 27

    13.9    Binding Effect. ......................................................................... 27

    13.10    Severability. ............................................................................. 28

    13.11    No Admissions. ......................................................................... 28

    13.12    No Payment of Attorneys' Fees. ............................................... 28

    13.13    Notices. .................................................................................... 28

    13.14    Governing Law. ........................................................................ 29

Rockies Region 2006 Limited Partnership and Rockies Region 2007 Limited Partnership hereby propose the following Amended Joint Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**1.1** *Definitions.*

For the purpose of the Plan, the following terms shall have the respective meanings set forth below:

***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code including, without limitation (a) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930, (b) Fee Claims and (c) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court or as otherwise expressly provided under the Plan.

***Administrative Reserve*** means the Cash reserve to be established pursuant to section 6.2(j) of the Plan and funded by PDC, in the amount of $3,000,000, which shall be used to pay all fees and expenses owing to or in respect of (i) Allowed Fee Claims of the Responsible Party, counsel to the Debtors and Graves & Co. Consulting, LLC, (ii) BMC Group, Inc., (iii) the PDC Administrative Claim, (iv) the LP Plaintiffs' Substantial Contribution Claims, and (v) any statutory fees owed to the office of the United States Trustee. Any sums remaining in the Administrative Reserve after items (i)-(v) above have been paid, shall be used to pay the LP Plaintiffs' Fee Award. The amounts in the Administrative Reserve shall not be used for any other purpose.

***Allowed*** means, with reference to any Claim or Equity Interest, any Claim or Equity Interest (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtors' Schedules and Statements and is not listed as contingent, liquidated or disputed, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under the Plan.

***Ballot*** means the ballot provided to holders of Equity Interests to (i) indicate their votes to accept or reject the Plan and (ii) opt out of the third party release in section 11.4 of the Plan.

***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Cases.

1

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

**Bar Date** means the last date to file proofs of claim against the Debtors, which was March 6, 2019 for all creditors except Governmental Units, and April 29, 2019 for Governmental Units.

**Business Day** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**Cash** means legal tender of the United States of America.

**Cash Consideration** has the meaning set forth in section 6.2(c) of the Plan.

**Causes of Action** has the meaning set forth in section 11.6 of the Plan.

**Chapter 11 Cases** means the above-captioned jointly administered chapter 11 bankruptcy cases of the Debtors.

**Claim** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

**Class** means any group of Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**Colorado Action** means the litigation captioned *Robert Dufresne, et al. v. PDC Energy, Inc., et al*, Case No. 1:17-cv-03079-RBJ pending in the United States District Court for the District of Colorado.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**Confirmation Hearing** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**Debtor** means any one of the Debtors, as the context may require.

**Debtors** means RR 2006 and RR 2007, together, in their capacities as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

**Determination Motion** means the Debtors' *Motion Pursuant to Section 541(a) of the Bankruptcy Code for Determination that Certain Claims and Causes of Action Are Property of the Estate* [Docket No. 137].

**Disallowed Claim or Equity Interest** means any Claim or Equity Interest, or portion thereof, that is not an Allowed Claim, an Allowed Equity Interest, or a Disputed Claim or Disputed Equity Interest.

**Disbursing Agent** means BMC Group, Inc., or any other party designated by the Bankruptcy Court, upon motion by the Debtors, to serve as a disbursing agent pursuant section 7.3 of the Plan.

**Disclosure Statement** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

**Dismissal Order** means the joint agreed order signed by counsel to the LP Plaintiffs and PDC dismissing the Colorado Action with prejudice. The Dismissal Order shall be submitted to the United States District Court for the District of Colorado on the Effective Date.

**Disputed Claim** means, with respect to a Claim, any such Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtors or any party in interest have interposed a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

**Disputed Equity Interest** means, with respect to an Equity Interest, any such Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Objection Deadline in accordance with the Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

**Distribution Date** means the date on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan, occurring on or as soon as practicable after the occurrence of the following: (i) the Dismissal Order becoming a Final Order, (ii) the payment of Allowed Administrative Claims, and (iii) payment of the LP Plaintiffs' Fee Award.

***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be the Confirmation Date.

***Effective Date*** means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in section 10.2 hereof shall have been satisfied or waived as provided in section 10.3 hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

***Effective Date Fee Estimate*** has the meaning set forth in section 6.2(f) of the Plan.

***Equity Interest*** means any "equity security" of the Debtors, as that term is defined in section 101(16) of the Bankruptcy Code.

***Estate(s)*** means the estate(s) of the Debtor(s) as created under section 541 of the Bankruptcy Code.

***Fee Claim*** means any Claim by, or amounts owing to, a Professional Person under sections 328, 330, 331, 503 or 1103 of the Bankruptcy Code or as provided for under this Plan for the allowance of compensation and reimbursement of expenses in the Chapter 11 Cases, including the LP Plaintiffs' Fee Award.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***General Unsecured Claim*** means any Claim against a Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim or an Equity Interest.

***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Limited Partnership Agreement** means, with respect to each Debtor, the limited partnership agreement among such Debtor's general and limited partners.

**Local Rules** means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.

**LP Plaintiffs' Substantial Contribution Claims** has the meaning set forth in section 6.2(e) of the Plan.

**LP Plaintiffs** means Robert R. Dufresne, as Trustee of the Dufresne Family Trust; Michael A. Gaffey, as Trustee of the Michael A. Gaffey and JoAnne M. Gaffey Living Trust dated March 2000; Ronald Glickman, as Trustee of the Glickman Family Trust established August 29, 1994; Jeffrey R. Schulein, as Trustee of the Schulein Family Trust established March 29, 1989; and William J. McDonald, as Trustee of the William J. McDonald and Judith A. McDonald Living Trust dated April 16, 1991.

**LP Plaintiffs' Fee Award** has the meaning set forth in section 6.2(f) of the Plan.

**Objection Deadline** means the later of (a) ninety (90) days after the Effective Date and (b) such later as may be ordered by the Bankruptcy Court prior to the expiration of such ninety (90) day period, upon motion.

**Oil and Gas Contracts** means all of the interests, rights, claims, and benefits arising or accruing to either of the Debtors under any contract (including any lease) to which a Debtor is or may become a party that relate to the Oil and Gas Interests.

**Oil and Gas Interests** means all of the Debtors' right, title, and interest in and to all of their oil and gas properties, including any leases, wells or other real or personal property associated with the operation of such leases and wells.

**PDC** means PDC Energy, Inc. (f/k/a Petroleum Development Corporation) in its capacity as general managing partner for each Debtor.

**PDC Administrative Claim** means the costs and expenses borne by PDC for post-petition operations of the Debtors' assets, net of any associated revenue, which remain unreimbursed to PDC as of the date the Plan is confirmed; *provided, however,* that (i) the PDC Administrative Claim shall not include any post-petition plugging and abandonment costs and expenses incurred by PDC on the Debtors' behalf; and (ii) the amount of the PDC Administrative Claim shall not, under any circumstances, exceed $500,000.

**Person** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

**Petition Date** means October 30, 2018, the date on which each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**Plan** means this Chapter 11 Plan proposed by the Debtors, as the same may be amended, supplemented or otherwise modified, including any exhibits and schedules hereto.

**Post-Confirmation Debtors** means the Debtors, from and after the Confirmation Date.

**Priority Non-Tax Claim** means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

**Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**Professional Person** means any Person retained or to be compensated by the Debtors or under this Plan pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

**Pro Rata** means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Claims or Equity Interests (but excluding Disallowed Claims and Equity Interests) in such Class.

**Purchased Assets** means all of the Debtors' right, title, and interest in and to all of their properties, including but not limited to the Oil and Gas Interests and Oil and Gas Contracts.

**Responsible Party** means Karen Nicolaou, the Debtors' duly appointed responsible party in the Chapter 11 Cases.

**RR 2006** means Rockies Region 2006 Limited Partnership.

**RR 2007** means Rockies Region 2007 Limited Partnership.

**RR 2006 Settlement Payment** means $5,191,220 in Cash, to be paid by PDC to the RR 2006 Estate for (i) payment of 47% of the unpaid balance of the LP Plaintiffs' Fee Award outstanding (if any) after funds in the Administrative Reserve have been exhausted and (ii) distribution to holders of Equity Interests in RR 2006, other than PDC, pursuant to the terms of the Plan.

**RR 2007 Settlement Payment** means $5,911,780 in Cash, to be paid by PDC to the RR 2007 Estate for (i) payment of 53% of the unpaid balance of the LP Plaintiffs' Fee Award outstanding (if any) after funds in the Administrative Reserve have been exhausted and (ii) distribution to holders of Equity Interests in RR 2007, other than PDC, pursuant to the terms of the Plan.

**Schedules and Statements** means, collectively, the schedules of assets and liabilities and the statement of financial affairs, as filed by each of the Debtors in the Chapter 11 Cases, as the same may be amended from time to time.

*Secured Claim* means a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien.

*Settlement Payment* means the RR 2006 Settlement Payment and the RR 2007 Settlement Payment, together.

*Voting Deadline* means the date set by the Bankruptcy Court by which ballots for accepting or rejecting the Plan must be received, which is September [___], 2019.

## 1.2 *Rules of Interpretation and Construction*.

(a) <u>Interpretation</u>. Unless otherwise specified herein, all section, article and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b) <u>Construction and Application of Bankruptcy Code Definitions</u>. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined in the Plan shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c) <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan.

(d) <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

## 2.1 *Administrative Expense Claims*.

All Administrative Expense Claims against the Debtors shall be treated as follows:

(a) <u>Time for Filing</u>. All holders of Administrative Expense Claims, other than (i) holders of LP Plaintiffs' Substantial Contribution Claims and (ii) Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within fourteen (14) days after the Effective Date. Any such request must be served on the Debtors, their counsel, counsel to PDC, and counsel to the LP Plaintiffs and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense

Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtors or the Post-Confirmation Debtors.

(b) <u>Allowance</u>. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is twenty-one (21) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c) <u>Payment</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Administrative Expense Claim, Cash from the Administrative Reserve in an amount equal to the Allowed amount of such Administrative Expense Claim on (or as soon as reasonably practicable after) the later of (i) the Effective Date, (ii) the Dismissal Order becoming a Final Order, or (iii) fourteen (14) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim.

## 2.2 *Fee Claims.*

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is fourteen (14) days after the Effective Date; *provided, however,* that upon confirmation of the Plan, counsel to the LP Plaintiffs shall be entitled to payment of the LP Plaintiffs' Fee Award pursuant to section 6.2(f) of the Plan and shall not be required to submit a fee application except as expressly provided therein. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtors. Allowed Fee Claims shall be paid in full in Cash from the Administrative Reserve on (or as soon as reasonably practicable after) the later of (i) the Effective Date, (ii) the Dismissal Order becoming a Final Order, or (iii) fourteen (14) days after entry of an order by the Bankruptcy Court allowing such Fee Claim, unless otherwise provided in section 6.2(f) of the Plan.

## 2.3 *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, at the Debtor's option: (i) Cash in an amount equal to the Allowed amount of such Claim, or (ii) regular installment payments of Cash (a) having a total value, as of the Effective Date, equal to the Allowed amount of the Claim, (b) over a period ending not later than five (5) years after the Petition Date and (c)

in a manner not less favorable than the most favored nonpriority Allowed General Unsecured Claims provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code). To the extent interest is required to be paid on any Priority Tax Claim, the rate of such interest shall be the rate determined under applicable nonbankruptcy law, as set forth in section 511 of the Bankruptcy Code. To the extent the holder of an Allowed Priority Tax Claim has a Lien on a Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full. On and after the Effective Date, all *ad valorem* property taxes (if any) will be paid as they become due, in the ordinary course.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtors are classified for all purposes, including voting, confirmation, and distribution, pursuant to the Plan as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1A | Priority Non-Tax Claims Against RR 2006 | No | No (deemed to accept) |
| Class 1B | Priority Non-Tax Claims Against RR 2007 | No | No (deemed to accept) |
| Class 2A | Secured Claims Against RR 2006 | No | No (deemed to accept) |
| Class 2B | Secured Claims Against RR 2007 | No | No (deemed to accept) |
| Class 3A | General Unsecured Claims Against RR 2006 | No | No (deemed to accept) |
| Class 3B | General Unsecured Claims Against RR 2007 | No | No (deemed to accept) |
| Class 4A | Equity Interests in RR 2006 | Yes | Yes |
| Class 4B | Equity Interests in RR 2007 | Yes | Yes |

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of the Plan.

4813-3839-8601.5

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1** *Classes 1A and 1B – Priority Non-Tax Claims*.

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against a Debtor agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in Cash from the applicable Debtor on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) fourteen (14) days after such Priority Non-Tax Claim becomes Allowed.

**4.2** *Classes 2A and 2B – Secured Claims*.

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a holder of an Allowed Secured Claim against a Debtor agrees to less favorable treatment, each holder of an Allowed Secured Claim shall, at the option of the Debtor in question, receive one of the following treatments: (i) payment in full in Cash from the applicable Debtor; (ii) the Collateral securing such Allowed Secured Claim; or (iii) other treatment that renders such Allowed Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

**4.3** *Classes 3A and 3B – General Unsecured Claims*.

Except to the extent that a holder of an Allowed General Unsecured Claim against a Debtor agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall be paid in full in Cash from the applicable Debtor on (or as soon as reasonably practicable after) the later of (a) the Effective Date or (b) fourteen (14) days after such General Unsecured Claim become Allowed.

**4.4** *Classes 4A and 4B – Equity Interests*

Except to the extent that a holder of an Allowed Equity Interest in a Debtor agrees to a different treatment, each holder of an Allowed Equity Interest in a Debtor, shall receive, in one or more distributions at such time as set forth in section 6.2(b) of the Plan, (i) its Pro Rata share of any Cash Consideration remaining with the applicable Debtor after payment of Allowed Priority Claims, and Allowed Claims in Classes 1A, 1B, 2A, 2B, 3A and 3B against the applicable Debtor and (ii) its Pro Rata share of the RR 2006 Settlement Payment or the RR 2007 Settlement Payment, as applicable, after payment of the unpaid balance of the LP Plaintiffs' Fee Award outstanding (if any) after funds in the Administrative Reserve have been exhausted, *provided*, that any holder of an Equity Interest who, on the Ballot, opts out of the releases set forth in section 11.4 of the Plan, shall not receive its share of the applicable Settlement Payment(s). The amount of the Settlement Payment shall be reduced by the amounts that would have been payable to those holders had such holders not opted out. For the avoidance of doubt, PDC shall not receive any distribution on account of its Equity Interests in the Debtors.

4813-3839-8601.5

## ARTICLE V

## IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

**5.1** *Classes Entitled to Vote*.

The holders of Claims in Classes 1A and 1B, 2A and 2B and 3A and 3B are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. The holders of Equity Interests in Classes 4A and 4B are impaired and entitled to vote to accept or reject the Plan.

**5.2** *Class Acceptance Requirement*.

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan. A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

**5.3** *Cramdown*.

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## MEANS OF IMPLEMENTATION

**6.1** *General*.

The Plan contemplates that all of the Debtors' Cash on hand, all Cash Consideration received from PDC and all Cash received in connection with the settlement set forth in section 6.2, will be paid to the holders of Allowed Claims and Allowed Equity Interests on the terms set forth in the Plan.

**6.2** *PDC Settlement*.

The Debtors, PDC and the LP Plaintiffs have reached a global resolution of all issues among them in these Chapter 11 Cases and the Colorado Action. Pursuant to Bankruptcy Rule 9019, the Plan does, and shall, constitute a compromise, settlement and release of all potential claims against PDC on the terms set forth below. Entry of the Confirmation Order shall constitute approval of the global resolution set forth below, which shall become effective upon the Effective Date.

(a)    Release of Estate Claims.  In exchange for the consideration set forth in this section 6.2, the Debtors and PDC agree to the following releases: on the Effective Date the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, at law, in equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law, which they have or may have against PDC and any of its respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.  On the Effective Date, PDC shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, at law, in equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law which it has or may have against the Responsible Party, the Debtors, and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

(b)    Settlement Payment.  As set forth more fully on the Ballot, all holders of Equity Interests in the Debtors shall be deemed to have consented to provisions of Article XI of the Plan, including the third party release described in section 11.4 of the Plan, regardless of whether a Ballot has been submitted, unless the holder of an Equity Interest has specifically checked the box on the Ballot to opt out of the third party release.  In consideration for the release set forth in section 11.4 of the Plan and other releases set forth in this Plan, on the Effective Date, PDC shall pay the RR 2006 Settlement Payment to RR 2006 and shall pay the RR 2007 Settlement Payment to RR 2007, with each Settlement Payment being reduced pro rata on a per-unit-basis to account for each holder of an Equity Interest who has opted out of the release set forth in section 11.4 of the Plan.  On the Distribution Date, in full and final satisfaction and release of any and all Causes of Action that could be asserted against PDC by the holder of an Equity Interest in either of the Debtors, the Settlement Payment (net of the unpaid balance of the LP Plaintiffs' Fee Award outstanding (if any) once funds in the Administrative Reserve have been exhausted) shall be distributed Pro Rata to the holders of Equity Interests in the Debtors who have not checked the box on the Ballot to opt out of the third party release provided for in section 11.4 of the Plan; *provided, however,* that no portion of the Settlement Payment shall be distributed to PDC.  Any holder of an Equity Interest who has checked the box on the Ballot to opt out of the third party release shall be deemed to have forfeited its right to its share of the applicable Settlement Payment.  For the avoidance of doubt, (i) the amount of the RR 2006 Settlement Payment shall be reduced by $801.61 per unit for each unit held by each holder of an Equity Interest in RR 2006 who opts out of the release contained in section 11.4 of the Plan, and (ii) the amount of the RR 2007 Settlement Payment shall be reduced by $879.86 per unit for each unit held by each holder of an Equity Interest in RR 2007 who opts out of the release contained in section 11.4 of the Plan.

(c)    Purchase of Estate Assets.  PDC shall purchase from the Debtors, and the Debtors shall sell to PDC, all of the Purchased Assets.  The Purchased Assets shall be

acquired by PDC free and clear of any and all liens, claims interests and encumbrances. The consideration to be paid by PDC to the Debtors' Estates for the purchase, sale and assignment of the Purchased Assets shall be $762,000 in the aggregate (the "Cash Consideration"), with $304,000 allocated to the assets purchased from RR 2006 and $458,000 allocated to the assets purchased from RR 2007. PDC agrees to waive any right to recovery on account of its claim and its Equity Interests in the Debtors with respect to the Cash Consideration. In addition to the Cash Consideration, PDC shall assume all liabilities associated with the Purchased Assets, including but not limited to any and all plugging and abandonment liability and any environmental liability associated with the Purchased Assets. On the Effective Date, PDC shall pay the Cash Consideration to the Debtors, and the Debtors shall execute and deliver to PDC such assignments, bills of sale and other instruments, in form and substance mutually agreed upon by the Debtors and PDC, as may be reasonably requested to convey ownership, title and possession of the Purchased Assets to PDC. PDC shall be deemed to be a good faith purchaser and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

(d)     PDC Waiver of Claim. As of the Petition Date, RR 2006 owed PDC $1,366,662 for unpaid operating expenses, which, upon the Effective Date of the Plan, shall be deemed to be waived in full.

(e)     LP Plaintiffs' Substantial Contribution Claims. Each of the five (5) named LP Plaintiffs shall receive $15,000 as a substantial contribution in accordance with section 503(b)(3)(D) of the Bankruptcy Code (the "LP Plaintiffs' Substantial Contribution Claims"), in addition to the distributions each will receive pursuant to the Plan. The LP Plaintiffs' Substantial Contribution Claims shall be paid from the Administrative Reserve at the same time as Allowed Fee Claims are paid.

(f)     LP Plaintiffs' Fee Award. Pursuant to Bankruptcy Rule 9019, counsel to the LP Plaintiffs shall, in accordance with section 503(b)(4) of the Bankruptcy Code, receive payment of their reasonable fees and expenses incurred in connection with the Chapter 11 Cases and the Colorado Action (the "LP Plaintiffs' Fee Award") subject to approval of the Plan by the Bankruptcy Court through the Confirmation Order. Counsel to the LP Plaintiffs have incurred $2,418,283.14 in reasonable fees and expenses through June 30, 2019 and estimate that they will incur up to an additional $40,000 in reasonable fees and expenses between July 1, 2019 and the Effective Date (the "Effective Date Fee Estimate"). The LP Plaintiffs' Fee Award shall be payable in an amount up to $2,458,283.14. If counsel to the LP Plaintiffs incur fees and expenses that exceed the Effective Date Fee Estimate, then counsel to the LP Plaintiffs may seek approval and payment of such excess amount through separate application to the Bankruptcy Court in accordance with section 2.2 of the Plan, with such excess amounts only being paid upon approval of the Bankruptcy Court.

The LP Plaintiffs' Fee Award shall be paid from any funds remaining in the Administrative Reserve after payment of the fees and expenses of (i) the Responsible Party, (ii) counsel to the Debtors, (iii) Graves & Co. Consulting, LLC, (iv) BMC Group, Inc. (v) the PDC Administrative Claim, (vi) the LP Plaintiffs' Substantial Contribution Claims, and (vii) any statutory fees owed to the office of the United States Trustee. To the extent that the Administrative Reserve is insufficient to pay the full amount of the LP Plaintiffs' Fee Award, the

balance will be deducted from the net proceeds of the Settlement Payment, allocated 47% and 53% to the RR 2006 Settlement Payment and the RR 2007 Settlement Payment, respectively.

(g)     <u>Dismissal of Colorado Action</u>. On the Effective Date, the LP Plaintiffs shall dismiss the Colorado Action with prejudice by submitting the Dismissal Order.

(h)     <u>Withdrawal of Motion to Dismiss</u>. On the Effective Date, the LP Plaintiffs shall withdraw their *Amended Motion for Dismissal of Chapter 11 Case* [Docket No. 140] with prejudice.

(i)     <u>PDC Option to Terminate</u>. PDC shall have, in its sole discretion, the option to terminate the settlement set forth in this section 6.2 in the event more than 3% of the total amount of the Debtors' outstanding non-PDC-owned limited partnership units timely and validly opt out of the releases set forth in section 11.4 of the Plan.  Within two (2) business days of the Voting Deadline, the Debtors shall provide to PDC and the LP Plaintiffs a summary of the parties that have opted-out of the release, which summary shall include: (i) the name of each limited partner opting-out of the release; and (ii) the number of partnership units owned by each party opting-out of the release.  PDC shall have two (2) business days after receiving such written notice to exercise the termination right set forth in this provision by sending a written notice to the Debtors and the LP Plaintiffs and filing the same with the Bankruptcy Court.

(j)     <u>Funding of Administrative Reserve</u>. In addition to the other consideration, terms and conditions set forth herein, on or prior to the Effective Date, PDC shall fund the Administrative Reserve; *provided, however*, that all funds in the Administrative Reserve shall only be used as set forth in the Plan, and no such funds may be used to pay or reimburse fees, costs, expenses incurred in connection with actions that (i) oppose the transactions set forth in this section 6.2, or (ii) are adverse to or otherwise challenge PDC's legal or equitable rights or interests.

(k)     <u>Mutual Releases</u>. The Debtors, PDC, the LP Plaintiffs, all limited partners in the Debtors who do not timely and validly opt-out of the releases, the Responsible Party, and each of their respective present and former members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, auditors and agents shall release each other from any and all liability from the beginning of time through the Effective Date, arising out of, relating to, or connected with the subject matter of the Colorado Action and the Chapter 11 Cases.

**6.3     *Release of Liens*.**

Except as otherwise provided herein, upon the occurrence of the Effective Date, any Lien securing a Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Responsible Party to evidence the release of such Lien, including the execution, delivery and filing or recording of releases.  As of the Effective Date, the Responsible Party shall be authorized to file on behalf of holders of Secured Claims form UCC-3s or such other forms as may be necessary to implement the provisions of this section of the Plan.

**6.4**     *Cancellation of Limited Partnership Agreements and Equity Interests*.

Upon the Effective Date, each Debtors' Limited Partnership Agreement, and the Equity Interests in each Debtor, shall be of no further force or effect, and the obligations of the Debtors and PDC thereunder shall be deemed satisfied in full and discharged; *provided, however*, that such Limited Partnership Agreements and Equity Interests shall continue in effect for the sole purpose of allowing the Debtors to wind-up their respective Estates and implement the terms of the Plan.  Upon the Effective Date, Equity Interests in the Debtors shall represent nothing more than an Equity Interest holder's right to distributions pursuant to the terms of the Plan from the respective Debtor, subject to the terms of the Plan, without any other or further rights of any kind.  Any and all trading in the Debtors' Equity Interests shall cease and desist on the Effective Date, and no further transfers of Equity Interests shall be of any force or effect, nor shall any transfers be recognized by the Debtors or PDC for any purpose.

**6.5**     *Partnership Actions*.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the partnership structure of the Debtors and any partnership action required by the Debtors or PDC in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any holders of Equity Interests, PDC or the Responsible Party. On or (as applicable) prior to the Effective Date, the Responsible Party and PDC, as appropriate and applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, and instruments contemplated by the Plan, and otherwise take any and all such actions necessary or desirable to effect the transactions contemplated by the Plan.  Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE VII

## DISTRIBUTIONS

**7.1**     *Date of Distributions*.

(a)     General. Unless otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)     Class 4 Equity Interests. Distributions to holders of Allowed Class 4 Equity Interests shall be made following (i) the Dismissal Order becoming a Final Order, (ii) the payment of Allowed Administrative Claims, and (iii) payment of the LP Plaintiffs' Fee Award.

(c)     De minimis Distributions.  If the final distribution to any holder of an Allowed Claim or Allowed Equity Interest will be in an amount less than $25, the Disbursing Agent shall donate such sums to the Anthony H. N. Schnelling Endowment Fund maintained by

the American Bankruptcy Institute, to assist in the provision of resources for research and education.

## 7.2 *Sources of Cash for Plan Distributions*.

Except as otherwise provided in the Plan or in the Confirmation Order, all Cash required for the payments to be made under the Plan shall come from each Debtor's Cash on hand on the Effective Date, the Settlement Payment, the Administrative Reserve, the Cash Consideration and any Cash subsequently received by the Debtors.

## 7.3 *Disbursing Agent*.

Distributions under the Plan shall be made by the Disbursing Agent upon direction from the Responsible Party. The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

## 7.4 *Rights and Powers of Disbursing Agent*.

The Disbursing Agent shall perform its duties hereunder in consultation with the Responsible Party and shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated thereby, (c) with the approval of the Responsible Party, employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

## 7.5 *Record Date for Distributions*.

At the close of business on the Distribution Record Date, the transfer ledgers or registers for the Debtors' existing Equity Interests shall be closed, and there shall be no further changes in the record holders of such Equity Interests. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Debtors and PDC as of the close of business on the Distribution Record Date.

## 7.6 *Recipients of Distributions*.

All distributions to holders of Allowed Claims and Allowed Equity Interests under the Plan shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest after the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtors and their counsel.

**7.7**    *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim or Allowed Equity Interest as set forth in the books and records of the Debtors and PDC, unless the applicable Debtor has been notified in writing of a change of address.  If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred twenty (120) days after the date of the distribution in question.  After such 120th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the respective Debtor from which it came and thereafter be distributed in accordance with the terms of the Plan, and (ii) the Claim or Equity Interest of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

**7.8**    *Means of Payment*.

All distributions made pursuant to the Plan shall be in Cash.

**7.9**    *Setoffs and Recoupment*.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim or Equity Interest any rights to payment that any of the Debtors may have against the holder of such Claim or Equity Interest. Neither the failure of the Debtors to setoff or recoup, nor the Allowance of any Claim or Equity Interest shall constitute a waiver or release by any of the Debtors of any right to payment, or right of setoff or recoupment.

**7.10**    *Distributions After Effective Date.*

Distributions made pursuant to the Plan after the Effective Date to holders of Disputed Claims and Disputed Equity Interests that are not Allowed as of the Effective Date, shall be deemed to have been made on the Effective Date.

**7.11**    *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued under the Plan, any party issuing any instrument or making any such distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such

instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**7.12    *No Postpetition Interest*.**

Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interests, and no holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date.

**7.13    *Time Bar to Payments*.**

Checks issued by the Disbursing Agent under the Plan shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance.  Requests for reissuance of any check shall be made in writing directly to counsel to the Debtors by the person to whom such check was originally issued.  Any request for re-issuance of a voided check must be made on or before the end of the 120-day period referenced in this section 7.13.  After such 120-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with section 7.7 of the Plan, and all Claims or Equity Interests in respect of such void checks shall be discharged and forever barred.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1    *Objections to Claims*.**

Except insofar as a Claim or Equity Interest is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Debtors, or any other party in interest, shall be entitled to object to Claims and Equity Interests.  Any objections to Claims and Equity Interests shall be served and filed by the Objection Deadline.  Any Claim or Equity Interest as to which an objection is timely filed shall be a Disputed Claim or Disputed Equity Interest, respectively.

**8.2    *No Distributions Pending Allowance*.**

If a timely objection is made with respect to any Claim or Equity Interest, no payment or distribution under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes Allowed.

**8.3    *Distributions After Allowance*.**

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Equity Interest the

4813-3839-8601.5

distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest.

**8.4** ***Disallowance of Late Filed Claims; Proof of Equity Interest.***

(a)     Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim for which a proof of claim is filed after the applicable Bar Date shall be deemed disallowed.  The holder of a Claim that is disallowed pursuant to this section 8.4 shall not receive any distribution on account of such Claim, and neither the Debtors nor the Distribution Agent shall need to take any affirmative action for such Claim to be deemed disallowed.

(b)     Holders of Equity Interests need not, and are not required to, file proof of such interests in order to receive a distribution under the Plan.

## ARTICLE IX

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**9.1** ***Rejection of Contracts and Leases.***

As set forth in section 6.2(c), PDC is assuming all Oil and Gas Contracts as a Purchased Asset.  Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected all other executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

**9.2** ***Inclusiveness.***

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease.

**9.3** ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the applicable Debtor and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date.  Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**10.1** *Conditions to Confirmation of Plan.*

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)     The condition giving PDC the right to terminate the settlement, as set forth in section 6.2(i) of the Plan, either shall have not occurred or PDC shall not have exercised its right to terminate the settlement;

(b)     An order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and

(c)     The Confirmation Order shall be in a form and substance satisfactory to the Debtors, PDC and the LP Plaintiffs.

**10.2** *Conditions to Effective Date of Plan.*

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(a)     The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases, that Confirmation Order shall have become a Final Order, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

(b)     The Settlement Payment and the Cash Consideration shall have been received by the Debtors

(c)     The Dismissal Order shall have been submitted for entry by the United States District Court for the District of Colorado;

(d)     The Administrative Reserve shall have been funded;

(e)     The Determination Motion shall have been granted pursuant to Final Order acceptable to the Debtors and PDC; and

(f)     All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

**10.3**    *Waiver of Conditions Precedent.*

Any of the foregoing conditions (with the exception of the conditions set forth in sections 10.1(b) and 10.2(a)) may be waived by agreement of the Debtors, PDC, and the LP Plaintiffs without notice to or order of the Bankruptcy Court.  The failure to satisfy or waive any condition may be asserted by the Debtors, PDC, and the LP Plaintiffs regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, PDC, and the LP Plaintiffs).  The failure of the Debtors, PDC, and the LP Plaintiffs to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

**10.4**    *Effect of Failure of Conditions.*

If the foregoing conditions have not been satisfied or waived in the manner provided in section 10.2 hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; (vi) the Plan shall be deemed withdrawn; and (vii) the order approving the Determination Motion shall be vacated.  Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the limited service list maintained in the Chapter 11 Cases.

**10.5**    *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors, PDC, or the LP Plaintiffs with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors, PDC, the LP Plaintiffs or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI

## EFFECT OF CONSUMMATION

**11.1**    *Revesting of Assets.*

Upon the Confirmation Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates, including Causes of Action not released under the Plan, shall vest in the Post-Confirmation Debtors, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise provided in the Plan.

**11.2** *Exculpation.*

Neither the Debtors, the Responsible Party, PDC, the LP Plaintiffs, nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors, successors or assigns, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, this section 11.2 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

**11.3** *Releases by the Debtors and PDC.*

On the Effective Date, the Debtors shall be deemed to have released and shall be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under Chapter 5 of the Bankruptcy Code or other applicable law which they have or may have against any of their respective members, managers, officers, directors, employees, general partners, limited partners who have not opted out of the release in section 11.4 of the Plan, affiliates, funds, advisors, attorneys or agents, the Responsible Party, PDC, the LP Plaintiffs and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

On the Effective Date, PDC shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, at law, in equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law which it has or may have against the Responsible Party, the Debtors, the Debtors' limited partners who have not opted out of the release in section 11.4 of the Plan, the LP Plaintiffs and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

**11.4** *Third Party Release.*

*Upon the Effective Date, except as otherwise provided in the Plan and except for the right to enforce the Plan, all Persons who are entitled, directly or indirectly, to receive a distribution under the Plan, and who have not specifically opted out of this release on the Ballot by submitting the Ballot prior to the Voting Deadline in the manner set forth in the Ballot itself (the "Releasing Parties"), shall be deemed to forever release, waive and discharge the Debtors, the Post-Confirmation Debtors, the Responsible Party, PDC, the LP Plaintiffs and each of their respective constituents, principals, officers, directors, employees, members, managers, partners, affiliates, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors, and assigns (the "Released Parties") of and from any and all Liens, Claims, obligations, suits, judgments, damages (including consequential, punitive or exemplary damages), rights, remedies, causes of action, liabilities, encumbrances, security interests, Equity Interests or charges of any nature or description whatsoever, arising out of, relating to or connected with the following (collectively, the "Released Claims")*

*(i) the subject matter, allegations, or claims in the Colorado Action, and any allegations or claims that could have been raised in the Colorado Action,*

*(ii) the Debtors,*

*(iii) the Chapter 11 Cases, or*

*(iv) affecting property of the Debtors' Estates,*

*whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above, whether at law, in equity or otherwise, based upon any condition, event, act, omission, occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, all regardless of whether (a) a proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan.*

*The foregoing shall cover all claims, known or unknown, and the Releasing Parties waive the protections of any statute or law similar to California Civil Code Section 1542, which provides:*

*A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or settlement with the debtor or released party.*

*The Releasing Parties shall acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to hereby fully,*

*finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties.*

### 11.5 *Injunction and Stay.*

(a) *Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Post-Confirmation Debtor or other entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Post-Confirmation Debtor with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Post-Confirmation Debtor, or against the property or interests in property of any Post-Confirmation Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Post-Confirmation Debtor, or against the property or interests in property of any Post-Confirmation Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.4 hereof; provided however, the foregoing does not affect Persons that have validly opted-out of the third party release in section 11.4 of the Plan from pursuing any claims that would otherwise be covered by section 11.4 of the Plan.*

(b) Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 11.6 *Preservation of Claims.*

Except as otherwise provided in sections 11.3, 11.4 and 11.5 of the Plan, as of the Confirmation Date, pursuant to sections 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall constitute assets of the Post-Confirmation Debtors and shall vest in the Post-Confirmation Debtors. Thereafter, the Responsible Party, on behalf of the Post-Confirmation Debtors, and as a representative of the Debtors and the Post-Confirmation Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have the authority to commence and prosecute Causes of Action for the benefit of the holders of Allowed Equity Interests. Neither the Post-Confirmation Debtors nor the Responsible Party intend to pursue any such Causes of Action after the Effective Date, and neither the Post-Confirmation Debtors nor the Responsible Party shall be liable to any party as a result thereof.

### 11.7 *Compromise of Controversies.*

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and

controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, motions, applications, and contested matters in the Chapter 11 Cases and grant or deny any motion or application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Debtors under section 11.6 of the Plan;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement execute and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

4813-3839-8601.5

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted under sections 11.2, 11.3 and 11.4 hereof;

(m)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(n)     To enter a final decree(s) closing the Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS

### 13.1   *Payment of Statutory Fees.*

All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as appropriate.

### 13.2   *Filing of Additional Documents.*

The Debtors, with the agreement of PDC and the LP Plaintiffs, may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 13.3   *Schedules, Exhibits and Plan Supplement Incorporated.*

All exhibits and schedules to the Plan, and the documents contained in the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

### 13.4   *Amendment or Modification of the Plan.*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors, with the agreement of PDC and the LP Plaintiffs to the extent such modification affects either PDC or the LP Plaintiffs, as applicable, at any time prior to or after the Confirmation Date.  Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

26

**13.5** *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**13.6** *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**13.7** *Expedited Tax Determination.*

The Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

**13.8** *Ordinary Course.*

From and after the Confirmation Date, the Responsible Party, on behalf of the Post-Confirmation Debtors, is authorized to and may enter into all transactions including, but not limited to, the retention of professionals, and pay and fees and expenses incurred thereby and in connection therewith, in the ordinary course of business, without the need for Bankruptcy Court approval.

**13.9** *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

4813-3839-8601.5

**13.10** *Severability.*

      If the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors, with the consent of PDC and the LP Plaintiffs, may modify the Plan in accordance with section 13.4 hereof so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of the Plan; or (ii) require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

**13.11** *No Admissions.*

      If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, any Debtor, (b) prejudice in any manner the rights of any Debtor or any other party in interest, or (c) constitute an admission of any sort by any Debtor or other party in interest.

**13.12** *No Payment of Attorneys' Fees.*

      Except for the fees of Professional Persons, the Responsible Party and the LP Plaintiffs' Fee Award, no attorneys' fees shall be paid by the Debtors with respect to any Claim or Equity Interest unless otherwise specified in the Plan or a Final Order of the Bankruptcy Court.

**13.13** *Notices.*

      All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

HARNEY MANAGEMENT PARTNERS
Attention:  Karen Nicolaou
Responsible Party for RR 2006 and RR 2007
777 S. Post Oak Lane, Suite 1700
Houston, Texas 77056
Email: knicolaou@harneypartners.com

with a copy to:

GRAY REED & McGRAW LLP
Attention: Jason S. Brookner
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-3132

4813-3839-8601.5

Email: jbrookner@grayreed.com

**13.14** *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

Dated: July 24, 2019
       Dallas, Texas

              **ROCKIES REGION 2006 LIMITED PARTNERSHIP**

              By:   */s/ Karen Nicolaou*
                    Karen Nicolaou, Responsible Party

              **ROCKIES REGION 2007 LIMITED PARTNERSHIP**

              By:   */s/ Karen Nicolaou*
                    Karen Nicolaou, Responsible Party

**GRAY REED & McGRAW LLP**
Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Amber M. Carson
Texas Bar No. 24075610
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

**COUNSEL TO THE DEBTORS**

4813-3839-8601.5