

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 3, 2019**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ROCKIES REGION 2006 LIMITED | § | |
| PARTNERSHIP and ROCKIES REGION | § | Case No. 18-33513-sgj-11 |
| 2007 LIMITED PARTNERSHIP, | § | |
| | § | |
| Debtors. | § | Jointly Administered |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

Upon the _Debtors' Amended Joint Chapter 11 Plan_ [Docket No. 226, with the final

solicitation version appearing at Docket No. 251 and a technical correction to same appearing at

Docket No. 252] (as modified, amended or supplemented from time to time, the "Plan") and the

_Disclosure Statement for Amended Joint Chapter 11 Plan_ [Docket No. 227, with the final

solicitation version appearing at Docket No. 251 and a technical correction to same appearing at

Docket No. 252] (the "Disclosure Statement"); [1] and the Plan and Disclosure Statement having

been distributed or made available to holders of Claims and Equity Interests and other parties in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

interest as provided in the Disclosure Statement Order;[2] and upon the hearing to consider confirmation of the Plan conducted on October 2, 2019 (the "Confirmation Hearing"); and good and sufficient notice of the Plan, the Disclosure Statement and the Confirmation Hearing having been provided to holders of Claims and Equity Interests in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and the orders of this Court, as established by the certificate of service filed with the Court,[3] and such notice being sufficient under the circumstances and no other or further notice being required; and after full consideration of (i) testimony and other evidence adduced at the Confirmation Hearing, and (ii) the declaration filed by the Debtors' Court-appointed voting and solicitation agent, BMC Group, Inc. ("BMC"), dated September 30, 2019, regarding the methodology applied to the tabulation of the voting results with respect to Plan [Docket No. 264] (the "BMC Declaration"); and upon the objection to confirmation of the Plan [Docket No. 261] (the "Objection") filed by the Securities and Exchange Commission (the "SEC"); and upon the memorandum of law filed by the Debtors in support of confirmation of the Plan and in response to the Objection [Docket No. 266] (the "Memorandum of Law"); upon the entire record of these Chapter 11 Cases, the record made at the Confirmation Hearing and the arguments of counsel; and the Court having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby

---

[2] *See Order Approving Disclosure Statement, the Form of Ballots and Solicitation Procedures, Scheduling Certain Dates in Connection with Confirmation, and Granting Related Relief* [Docket No. 246] (the "Disclosure Statement Order").

[3] *See* Docket No. 253 (Certificate of Service for mailing of solicitation packages).

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

B.      <u>Jurisdiction, Venue, Core Proceeding</u>.  This Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## CHAPTER 11 CASES

C.      <u>Commencement of the Chapter 11 Cases</u>.  On October 30, 2018 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By order dated November 8, 2018, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered.  The Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

D.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and pleadings reflected

therein including, without limitation, all motions, notices, objections and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

## SOLICITATION AND NOTICE

E.     <u>Solicitation and Notice</u>.   On August 27, 2019, the Court entered its Disclosure Statement Order, which, among other things, (i) approved the Disclosure Statement; (ii) established procedures for the solicitation of votes on the Plan; and (iii) scheduled a hearing and established notice and objection procedures for confirmation of the Plan.   The following materials (collectively, the "<u>Solicitation Materials</u>") were served upon parties in interest in compliance and in accordance with the Bankruptcy Rules and the Disclosure Statement Order, as applicable:

- the Plan;

- the Disclosure Statement;

- the Disclosure Statement Order;

- the Determination Motion (as defined in the Disclosure Statement Order);

- the *Notice of Technical Correction to Solicitation Versions of (I) Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan and (II) Debtors' Amended Joint Chapter 11 Plan* [Docket No. 252];

- the Confirmation Hearing Notice [Docket No. 249]; and

- a ballot and return envelope.

As described in the BMC Declaration (a) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these Chapter 11 Cases and (b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and the Disclosure Statement Order.

F.      _Voting_.  Votes on the Plan were solicited after disclosure to holders of Claims and Equity Interests of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the BMC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

G.      _Plan Modifications_.  Modifications to the Plan, as well as other settlements and resolutions announced on the record at the Confirmation Hearing, all of which are reflected herein, do not materially or adversely affect or change the treatment of any Claim or Equity Interest and are hereby approved.

### COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

H.      _Burden of Proof._  The Debtors have met their burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.  *See generally, In re Briscoe Enters., Ltd. II,* 994 F.2d 1160, 1165 (5th Cir. 1993), *cert. denied,* 510 U.S. 992 (1993).

I.      _Bankruptcy Rule 3016(a)_.  The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

J.      _Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))_.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      _Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))_.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article III of the Plan designates four (4) Classes of Claims against and Equity Interests in each Debtor, for a total of eight (8) classes.  As

required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III and section 5.1 of the Plan specify that Classes 1A and 1B, 2A and 2B, and 3A and 3B are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article III and section 5.1 of the Plan specify that Classes 4A and 4B are impaired and Article IV of the Plan sets forth the treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)     <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  Article IV of the Plan provides for the same treatment under the Plan for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment in respect of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides for adequate and proper means for its implementation including, without limitation, (a) sources of consideration for Plan distributions, (b) consummation of the global settlement among the Debtors, PDC and the LP Plaintiffs described in section 6.2 of the Plan (the "<u>Global Settlement</u>"), (c) the cancellation of all Equity Interests in the Debtors and the Debtors' ultimate

dissolution, (d) the cancellation of certain existing agreements, obligations, instruments, and interests, (e) the vesting of the assets of the Debtors' estates in the Post-Confirmation Debtors, and (f) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi) <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Because the Debtors are liquidating, the prohibition on the issuance of nonvoting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code, is not applicable.

(vii) <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Responsible Party will continue in her capacity as such following confirmation of the Plan, until the Chapter 11 Cases are wound down and concluded. The Responsible Party's continuance in such role is consistent with the interests of holders of Claims and Equity Interests and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

K. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i) <u>Impairment/Unimpairment of Any Class of Claims or Interests (§ 1123(b)(1))</u>. Pursuant to the Plan, Classes 1A and 1B, 2A and 2B, and 3A and 3B are unimpaired and Classes 4A and 4B are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii) <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. Article IX of the Plan provides for the rejection of the Debtors' remaining executory contracts and unexpired leases (if any), effective as of the Effective Date, except for

any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned or rejected pursuant to an Order of the Bankruptcy Court entered on or before the Confirmation Date, (b) previously expired or terminated by its own terms or (c) is the subject of a motion to assume, assume and assign or reject filed on or prior to the Confirmation Date.

(iii)     Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)). Article VI of the Plan provides for settlement of all Claims and Causes of Action by and against the estate, the LP Plaintiffs and PDC through the Global Settlement.  As set forth below, the Global Settlement is fair and equitable and will be approved.

(iv)     Modification of the Rights of Holders of Claims (11 U.S.C. § 1123(b)(5)). Article III of the Plan modifies or leaves unaffected, as the case may be, the right of holders of each class of Claims and Equity Interests.

(v)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)).  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) distributions to holders of Claims and Equity Interests, (b) retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (c) resolution of Disputed Claims, (d) allowance of certain Claims, (e) releases by Debtors of certain parties, (f) releases by the holders of Claims and Equity Interests, and (g) exculpations of certain parties.

L.     Cure of Defaults (11 U.S.C. § 1123(d)).  The Plan does not contemplate the cure of any defaults.  Thus, section 1123(d) of the Bankruptcy Code is not applicable.

M.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)     Each Debtor is eligible to be a debtor under section 109(d) of the Bankruptcy Code;

(b)     The Debtors have complied with all provisions of the Bankruptcy Code and Bankruptcy Rules, except as otherwise provided or permitted by orders of this Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

N.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.   The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record made at the Confirmation Hearing and the other proceedings in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a liquidation of the Debtors.  The Plan was negotiated at arm's-length among representatives of the Debtors, PDC and the LP Plaintiffs.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length.  Such provisions are consistent with sections 105, 1122, 1123(b)(6), 1125, 1129, and 1142 of the Bankruptcy Code, are each an integral part and necessary for the success of the Plan, and were not included in the Plan for any improper purpose.

O.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   Any payment to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code;

*provided, however*, that the LP Plaintiffs' Fee Award is being approved as reasonable pursuant to subsection KK of this Order, and the LP Plaintiffs and their counsel shall not be required to submit a fee application in accordance with section 6.2(f) of the Plan.

P. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. It has been disclosed in the Plan and in the Disclosure Statement that the Responsible Party will continue in that capacity after confirmation of the Plan, and the continuance in such office by the Responsible Party is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. No other insiders will be employed or retained by the Post-Confirmation Debtors.

Q. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Debtors.

R. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Debtors are liquidating, and the estates will be enhanced as a result of the Global Settlement, thereby maximizing distributions to holders of Equity Interests. If the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, the Global Settlement would not necessarily be enforceable and the consideration thereunder may not be available for distribution, additional costs and expenses would be incurred by a chapter 7 trustee, and litigation would likely ensue with unknown and questionable results. Accordingly, each holder of an Equity Interest in Classes 4A and 4B has either accepted the Plan, or will receive or retain under the Plan on account of its Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the applicable Debtor were liquidated under chapter 7 of

the Bankruptcy Code on such date. Accordingly, the Plan satisfies the "best interest of creditors" test with respect to each of Classes 4A and 4B under section 1129(a)(7) of the Bankruptcy Code.

S.  <u>Acceptance by/Unimpairment of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Classes 1A and 1B, 2A and 2B, and 3A and 3B are unimpaired by the Plan and holders of Claims in such Classes are thus conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4A and 4B are impaired by the Plan, and each such Class has accepted the Plan in accordance with section 1126(d) of the Bankruptcy Code, as established by the BMC Declaration. Therefore, Section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes.

T.  <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

U.  <u>Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. No Class of Claims is impaired under the Plan. Section 1129(a)(10) is, therefore, inapplicable.

V.  <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Debtors are liquidating, pursuant to the Plan. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

W.  <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Court, have been or will be paid by the Debtors on the Effective Date pursuant to section 13.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtors do not pay any "retiree benefits," as defined in section 1114 of the Bankruptcy Code and section 1129(a)(13) of the Bankruptcy Code is thus inapplicable in these Chapter 11 Cases.

Y. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z. <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtors are not non-profit corporations or trusts. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan subject to confirmation. Section 1129(c) of the Bankruptcy Code has been satisfied.

CC. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

DD. <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>. These Chapter 11 Cases are not small business cases and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

## COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE

EE.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in these Chapter 11 Cases, the Debtors, the Responsible Party, and their respective advisors, attorneys, and agents, each in their capacity as fiduciary to the Debtors, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the preparation and solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan and the Global Settlement, the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## COMPLIANCE WITH SECTION 1126 OF THE BANKRUPTCY CODE

FF.     Acceptance of Plan (11 U.S.C. § 1126).  As set forth in the BMC Declaration, each impaired voting Class has voted to accept the Plan, in accordance with the requirements of section 1126 of the Bankruptcy Code.

## PLAN IMPLEMENTATION

GG.     The terms of the Plan are incorporated by reference and are, except as modified herein, proper in all respects, and constitute an integral part of this Confirmation Order.

HH.     The Plan and the Global Settlement has been negotiated in good faith and at arm's-length and shall, on and after the Effective Date, constitute legal, valid, binding and

authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

II.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Debtors, the Responsible Party, PDC and the LP Plaintiffs, and all of their respective members, managers, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, funds, agents and representatives will be acting in good faith if they proceed to (i) consummate the Plan and Global Settlement, and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

JJ.     <u>The Global Settlement</u>.  The Global Settlement is necessary to, and is an integral and essential element of, the Plan and its consummation.  The terms and conditions of the Global Settlement, including, but not limited to, the releases set forth in sections 11.3 and 11.4 of the Plan, are fair and reasonable under the circumstances for at least the following reasons:

(i)     <u>The Settlement Was Negotiated in Good Faith, at Arm's Length, and There Is No Evidence of Fraud or Collusion</u>.  The Debtors, PDC and the LP Plaintiffs fairly and honestly negotiated the Global Settlement in good faith and at arm's length, including attending a two-day mediation presided over by former Bankruptcy Judge Leif Clark, and further negotiations conducted among the parties thereafter.  No party or objector has suggested otherwise.  Each party was separately represented in the mediation and the settlement negotiations by experienced and sophisticated counsel, who have

represented that this settlement is in the best interest of the Debtors and the Equity Interest holders.

(ii)   <u>The Complexity, Expense and Likely Duration of Litigation.</u>  The disputes between the Debtors, the LP Plaintiffs and PDC are highly complex and involve the interpretation of lengthy partnership agreements, oil and gas drilling technology and practices over the past ten or more years, and West Virginia limited partnership law.  No trial date has been set on the Colorado Action, and it would likely be many months (or years) before the case would be tried.  Absent the Global Settlement, the Debtors, PDC and the LP Plaintiffs would face a long and expensive litigation.

(iii)   <u>Stage of Proceedings and Amount of Discovery Completed</u>.  The Colorado Action was filed in December 2017 but was stayed pending these Chapter 11 Cases.  PDC prevailed, in part, on a motion to dismiss certain claims.  In these Chapter 11 Cases, the LP Plaintiffs submitted an expert report setting forth their estimated recovery in the Colorado Action, were they to prevail on the merits.  The LP Plaintiffs have also taken the depositions of a representative of PDC and the Debtors' Responsible Party in connection with their *Amended Motion for Dismissal of Chapter 11 Case* [Docket No. 140], and all parties have exchanged considerable document discovery.  Although the Colorado Action is still far from being ready for trial, these Chapter 11 Cases, and the discovery conducted in connection therewith, have advanced to a point where the Debtors, LP Plaintiffs and PDC can reasonably assess the settlement value of the disputed claims.

(iv)   <u>Probability of Success on the Merits with Due Consideration for the Facts and the Law</u>.  The probability of success on the merits of the litigation in the Colorado

Action is questionable. The Debtors and LP Plaintiffs face a serious, substantial risk that they would recover nothing at the end of the litigation. The District Court in the Colorado Action has already issued an opinion (held in abeyance pending the outcome of this bankruptcy case) dismissing key claims asserted by the LP Plaintiffs on behalf of the Equity Interest holders and the Debtors. As indicated in that opinion, there is a potentially dispositive statute of limitations defense even for the claims that survived the motion to dismiss. In addition, the Debtors have submitted a motion for an order that all the claims asserted in the Colorado Action belong to the Debtors, which is being granted simultaneously with the Confirmation Order pursuant to separate order, foreclosing the putative class claims. These factors weigh in favor of approval of the Global Settlement.

(v) <u>Immediate Recovery Outweighs Possibility of Future Recovery</u>. The Global Settlement results in a settlement payment by PDC to the Debtors' Estates of over $11 million in consideration for a release of all claims held by the Debtors and Equity Interest holders that do not elect to opt-out of the releases set forth in section 11.4 of the Plan, arising out of, relating to, or connected with the subject matter of the Colorado Action and the Chapter 11 Cases. For the reasons set forth in the preceding paragraph, there is no guarantee that, at the end of protracted litigation, the Debtors or Equity Interest holders would receive an amount any greater than this, and there is a very real possibility that they could receive nothing. No party in interest has suggested that it would be in the Debtors' or Equity Interest holders' best interests to fully litigate the claims rather than take advantage of the guaranteed recovery provided under the Plan pursuant to the Global Settlement.

(vi) <u>Opinions of the Debtors, LP Plaintiffs and Equity Interest Holders</u>. The Responsible Party for the Debtors and counsel for the LP Plaintiffs have represented that the Global Settlement is in the best interest of the Debtors and the Equity Interest holders. As evidenced in the BMC Declaration, the holders of Equity Interests have overwhelmingly voted in favor of the Plan, including the Global Settlement and the releases therein, and no Equity Interest holder has opted out of the release in section 11.4 of the Plan. This evidence shows that the Equity Interest holders believe the Global Settlement is fair and reasonable, which weighs in favor of approval.

The performance by the Debtors, the Responsible Party, PDC and the LP Plaintiffs under the Global Settlement is authorized, and the parties are directed to consummate the same. The Global Settlement is the product of arm's-length negotiations between the Debtors, PDC and the LP Plaintiffs, and has been proposed in good faith, for legitimate business purposes, is supported by reasonably equivalent value and fair consideration and reflects the Debtors' exercise of reasonable business judgment. Entry into the Global Settlement and consummation of the same, including, but not limited to, the releases set forth in sections 11.3 and 11.4 of the Plan, is in the best interests of the Debtors, their estates, their creditors and their Equity Interest holders. The Debtors have provided all interested parties with sufficient and adequate notice of, and an opportunity to be heard with respect to, the Global Settlement, including, but not limited to, the releases set forth in section 11.3 and 11.4 of the Plan. The terms and provisions of the Global Settlement, including, but not limited to, the releases set forth in section 11.3 and 11.4 of the Plan, meet the requirements of Bankruptcy Rule 9019, as set forth more fully in *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980), and *In re Cajun Elec. Power Coop., Inc.*, 119

F.3d 349, 356 (5th Cir. 1997) (quoting *In re Foster Mortg. Corp.*, 68 F.3d 914, 917-18 (5th Cir. 1995)), and are approved pursuant to this Confirmation Order.

KK.    The LP Plaintiffs' Fee Award.    The LP Plaintiffs have made a substantial contribution to these Chapter 11 Cases by and through their efforts in negotiating the Global Settlement.  The LP Plaintiffs' Fee Award is reasonable and necessary and is hereby approved pursuant to this Confirmation Order.  The LP Plaintiffs' Fee Award shall be payable pursuant to section 6.2(f) of the Plan.

LL.    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

MM.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to Article IX of the Plan.  Each assumption or rejection of an executory contract or unexpired lease as provided in section 9.1 of the Plan shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

## EXCULPATIONS, INJUNCTIONS AND RELEASES

NN.     The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the exculpation, injunctions, stays and releases set forth in section 11.2, 11.3, 11.4 and 11.5 of the Plan, as modified herein.   Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and injunctions set forth in sections 11.2, 11.3, 11.4 and 11.5 of the Plan (as modified herein) if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the Plan and Global Settlement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest.   Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors and their estates, creditors and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and Equity Interests and are necessary to the proposed reorganization.   Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases including, but not limited to, PDC.   The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunctions provided for in sections 11.2, 11.3, 11.4 and 11.5 of the Plan, as modified herein. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in Article XI of the Plan are

consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, exculpation and releases would seriously impair the Debtors' ability to confirm the Plan and reorganize. Further, the Ballot provided to holders of Equity Interests entitled to vote on the Plan provided such holders with an opportunity to opt out of the release contained in section 11.4 of the Plan. The terms of the Ballot, as reflected by the BMC Declaration, shall constitute conclusive proof as to whether any particular holder of an Equity Interest opted out. Further, to the extent any holder of an Equity Interest did not return a Ballot, such Equity Interest holder is conclusively presumed to have granted the release contained in section 11.4 of the Plan, in exchange for the portion of the Settlement Payment(s) to be made to such Equity Interest holder pursuant to the terms of the Plan and the Global Settlement. To the extent any holder of an Equity Interest properly and correctly opted out of such release, such holder is deemed to have *not* provided the releases contained in section 11.4 of the Plan, and such holder shall retain its rights, claims and causes of action (if any); *provided however*, such holder shall not receive its share of the applicable Settlement Payment(s). The amount of the Settlement Payment shall be reduced by the amounts that would have been payable to those holders had such holders not opted out.[4]

## **OTHER FINDINGS**

OO.    Conditions Precedent to Confirmation. The conditions precedent to confirmation set forth in section 10.1 of the Plan have been satisfied.

PP.    Retention of Jurisdiction. This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

---

[4] As set forth in the BMC Declaration and in the record at the Confirmation Hearing, no Equity Interest holders opted out of the third party releases.

QQ.    Objections.  All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections.

## THE PLAN SATISFIES CONFIRMATION REQUIREMENTS

RR.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

## ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Confirmation.  The Plan, as modified hereby, shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code.

2.    Solicitation and Notice.  Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with the terms of the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.    Objections.  All objections to the Plan not otherwise withdrawn at or prior to the Confirmation Hearing are overruled for the reasons articulated by the Court on the record at the Confirmation Hearing.

4.    Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Equity Interest in the Debtors and such holder's respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

5.     _Plan Classification Controlling_.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots submitted in connection with voting on the Plan: (a) were solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors for any purpose other than voting on the Plan.

6.     _Distribution Under the Plan_.  All distributions under the Plan shall be made in accordance with Article VII of the Plan.

7.     _Vesting of Assets (11 U.S.C. § 1141(b), (c))_.  As set forth in section 11.1 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the applicable Post-Confirmation Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or this Confirmation Order.  The vesting, on the Effective Date, of the property of the Debtors' estates in the Post-Confirmation Debtors does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

8.     _Dissolution of the Debtors_.  Upon the distribution and disposition of all assets of the Debtors' Estates pursuant to the Plan, the Debtors shall be deemed dissolved for all purposes, without the necessity for any further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; _provided, however,_ that the Responsible Party shall file with the appropriate state authority(ies) a certificate of dissolution, if necessary.

9. <u>Notice of Confirmation Date and Effective Date</u>.

(a) <u>Notice of Entry of Confirmation Order</u>. Within five (5) Business Days after the Confirmation Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of (i) the entry of this Confirmation Order and (ii) the last date to file (A) requests for payment of Administrative Expense Claims pursuant to section 2.1 of the Plan and Fee Claims pursuant to section 2.2 of the Plan, (B) Claims arising from the rejection of any executory contracts and unexpired leases pursuant to section 9.1 of the Plan, and (C) motions seeking allowance of Claims arising under section 506(b) of the Bankruptcy Code.

(b) <u>Notice of Effective Date</u>. Within five (5) Business Days after the Effective Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of the occurrence of the Effective Date.

10. <u>Administrative Expense Claims</u>.

(a) <u>Filing</u>. Except as otherwise provided in the Plan, all holders of Administrative Expense Claims arising from the Petition Dates through the Effective Date, other than (i) holders of LP Plaintiffs' Substantial Contribution Claims and (ii) Professional Persons holding Fee Claims, shall file with the Court a request for payment of such Claims within fourteen (14) days after the Effective Date. Any such request shall, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim, (ii) the amount of the Administrative Expense Claim, and (iii) the basis for the Administrative Expense Claim. Requests shall be promptly served on the following parties via electronic mail: (i) counsel to the Debtors, Gray Reed & McGraw, LLP, Attn: Jason S. Brookner (jbrookner@grayreed.com) and Lydia R. Webb (lwebb@grayreed.com) , (ii) counsel to PDC Energy, Inc., Hunton Andrews Kurth LLP, Attn: Robin Russell (rrussell@huntonak.com) and Joseph Rovira

(josephrovira@huntonak.com) and Irell & Manella LLP, Attn: Charles Elder (celder@irell.com); and (iii) counsel to the LP Plaintiffs, The Law Office of Mark A. Weisbart, Attn: Mark A. Weisbart (mark@weisbartlaw.net) and Foley Bezek Behle & Curtis, LLP, Attn: Thomas G. Foley (tfoley@foleybezek.com).

(b)      Allowance.   An Administrative Expense Claim for which a request for payment has been timely filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is twenty-one (21) days after such Administrative Expense Claim is filed.  If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of this Court.

(c)      Payment.    Allowed Administrative Expense Claims shall be paid in accordance with and pursuant to section 2.1(c) of the Plan.

11.    Fee Claims.   Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is fourteen (14) days after the Effective Date; *provided, however*, that upon confirmation of the Plan, counsel to the LP Plaintiffs shall be entitled to payment of the LP Plaintiffs' Fee Award pursuant to section 6.2(f) of the Plan and shall not be required to submit a fee application except as expressly provided therein.  Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court.  All final fee applications shall be set for hearing on the same day, as the Court's calendar permits, after

consultation with counsel to the Debtors. Allowed Fee Claims shall be paid in accordance with and pursuant to section 2.2 of the Plan.

12. <u>Record Date for Distributions</u>. The Distribution Record Date shall be August 26, 2019. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of any Claims or Equity Interests after the Distribution Record Date and shall be entitled instead to recognize for all purposes under the Plan and this Confirmation Order, including to effect distributions under the Plan, only those record holders stated on the transfer ledgers or registers maintained by the Debtors as of the close of business on the Distribution Record Date.

13. <u>Unclaimed Distributions</u>. If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors or PDC are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred twenty (120) days after the date of the distribution in question. After such 120th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the respective Debtor from which it came and thereafter be distributed Pro Rata to the holders of that Debtor's Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan, and (ii) the Claim or Equity Interest of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

14.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)    <u>General</u>.  Pursuant to section 9.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each Debtor is hereby deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor pursuant to an order of the Court, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date.  This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption or rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date.  Such assumption or rejection shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

(b)    <u>Bar Date for Rejection Damage Claims</u>.  All Claims arising out of the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served upon counsel to the Debtors no later than thirty (30) days after the earlier of (i) the date of entry of a Court order (including this Confirmation Order) approving such rejection or (ii) the Effective Date.  Any rejection Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

15.    <u>General Authorization</u>.  Upon the Effective Date, all action contemplated under the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the structure of the Debtors, and any action required by or in connection with the

Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any person or entity.

16.     Global Settlement.  The Global Settlement between the Debtors, PDC and the LP Plaintiffs is hereby approved, for the reasons stated above.  The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby.  Pursuant to sections 105 and 363 of the Bankruptcy Code, on the Effective Date, the transfer of the Purchased Assets from the Debtor to PDC pursuant to the Global Settlement shall be free and clear of all liens, claims and interests to fullest extent allowable under applicable law.  PDC has entered into the transactions contemplated by the Global Settlement in good faith, and is a good faith purchaser of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the transfer of the Purchased Assets shall not affect the validity of the sale or the transfer of the Purchased Assets to PDC free and clear of all liens, claims and interests, unless such authorization is duly stayed before closing of such transfer pending any appeal.  PDC is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code, and PDC proceeded in good faith in all respects in connection with the sale of the Purchased Asses and these chapter 11 cases generally.

17.     Payment of Statutory Fees.  All fees pursuant payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as appropriate.

18.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan

and any documents, instruments, or agreements, and any amendments or modifications thereto, including, but not limited to, the transfer of the Purchased Assets to PDC.

19. <u>Filing and Recording</u>. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law including, but not limited to, the transfer of the Purchased Assets to PDC.

20. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in

connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtors and approved by the Court on and after the Petition Dates through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

21. <u>Exculpation, Releases and Injunctions</u>. The exculpations, releases and injunctions contained in sections 11.2, 11.3, 11.4 and 11.5 of the Plan are hereby approved, as modified herein. As set forth on the record at the Confirmation Hearing:

(a) Section 11.2 of the Plan is hereby modified to read as follows, with additions shown in <u>double underline</u> font, and deletions shown in ~~strikethrough~~ font:

> ***Exculpation***. Neither the Debtors, the Responsible Party, ~~PDC, the LP Plaintiffs,~~ nor any of their respective ~~present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds,~~ advisors, attorneys or agents, <u>each in their capacity as fiduciary to the Debtors,</u> ~~or any of their predecessors, successors or assigns,~~ shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, this

section 11.2 shall not exculpate any party from any liability based upon <u>actual fraud</u>, gross negligence or willful misconduct. <u>For the avoidance of doubt, nothing in the foregoing should be interpreted to limit or impair the effect of the releases in section 11.3 and 11.4 of the Plan.</u>

(b)     Section 11.5(a) of the Plan is hereby modified to read as follows, with additions shown in <u>double underline</u> font, and deletions shown in ~~strikethrough~~ font:

> ***Injunction and Stay.*** *(a)* ***Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any*** ~~***Post-Confirmation Debtor or other***~~ ***<u>Person or</u> entity released~~, discharged~~ or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any*** ~~***Post-Confirmation Debtor***~~ ***<u>Person or entity released or exculpated hereunder</u> with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any*** ~~***Post-Confirmation Debtor***~~ ***<u>Person or entity released or exculpated hereunder</u>, or against the property or interests in property of any*** ~~***Post-Confirmation Debtor***~~ ***<u>Person or entity released or exculpated hereunder</u>, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any*** ~~***Post-Confirmation Debtor***~~ ***<u>Person or entity released or exculpated hereunder</u>, or against the property or interests in property of any*** ~~***Post-Confirmation Debtor***~~ ***<u>Person or entity released or exculpated hereunder</u> with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.4 hereof; <u>provided however</u>, the foregoing does not affect Persons who have validly opted-out of the third party release in section 11.4 of the Plan from pursuing any claims*** ~~***that***~~ ***<u>who</u> would otherwise be covered by section 11.4 of the Plan.***

22.     <u>Government Carve-out</u>.     Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit on the part of any Person as the owner, permittee, or operator of property after the Effective Date; or (d) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing,

outside this Court, any liability described in the preceding sentence. Nor shall anything in this Confirmation Order or the Plan divest any tribunal of any jurisdiction to adjudicate any claim, liability, or defense described in this paragraph of the Confirmation Order.

23.      <u>Conditions to Effective Date</u>.   The Plan shall not become effective unless and until the conditions set forth in Article X of the Plan have been satisfied or waived pursuant to section 10.2 and 10.3 of the Plan.

24.      <u>Retention of Jurisdiction</u>.   Upon the Effective Date, the Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

25.      <u>Appeal of the Confirmation Order</u>.   Except as otherwise provided herein, if any provision of this Confirmation Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Disbursing Agent prior to the effective date of such reversal, stay, modification, or vacatur.   Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto, and shall remain binding.   For the avoidance of doubt, and as set forth in the Plan, the reversal, stay, vacatur or modification of the releases set forth in sections 11.3 and 11.4 of the Plan shall result in a failure of the remainder of the Plan.

26. <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency among the Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Confirmation Order, the Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

27. <u>Authorization to Consummate Plan/No Stay</u>. Notwithstanding Bankruptcy Rule 3020(e), 6004(g), 6006(d), 7062 or otherwise, but subject to Article X of the Plan, the Debtors are authorized to consummate the Plan upon entry of this Confirmation Order, and the Confirmation Order shall take effect on the date hereof.

### END OF ORDER ###

Submitted by:

**GRAY REED & McGRAW LLP**

Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Amber M. Carson
Texas Bar No. 24075610
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
jbrookner@grayreed.com
lwebb@grayreed.com
acarson@grayreed.com

**COUNSEL TO THE DEBTORS**